**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**FREDRICK ANTONIO WHITEHEAD**                                **PLAINTIFF**

**VS.**                                       **CIVIL ACTION NO. 1:08cv323-JMR**

**PEARL RIVER COUNTY SHERIFF'S**
**DEPARTMENT and DAVID ALLISON, SHERIFF**                      **DEFENDANTS**

---

**MEMORANDUM OPINION:**

This matter is before the Court pursuant to a Motion [37-1] to Dismiss or in the Alternative for Summary Judgement and Qualified Immunity filed on behalf of the Defendants, Pearl River County Sheriff's Department and Sheriff David Allison. Defendants' Motion is accompanied by a Memorandum [38-1] in Support thereof. To date, Plaintiff has not filed a Response in Opposition. The Court being fully advised in the premises, and after carefully considering the pleadings filed as a matter of record, along with the applicable law, finds that the Defendants' Motion to Dismiss or in the Alternative for Summary Judgement and Qualified Immunity should be granted. Accordingly, all claims against Defendants should be dismissed with prejudice.

**FACTS:**

Plaintiff, Fredrick Whitehead, was arrested by the Picayune Police Department and charged with armed robbery. On April 10, 2008, Plaintiff was booked into the Pearl River County Jail ("PRCJ"). On July 24, 2008, Plaintiff, filed this *pro se* § 1983 action against the Pearl River County Sheriff's Department, and on August 15, 2008, he added David Allison ("Allison") in both his individual and official capacity[1] as the Sheriff of Pearl River County, and alleges that he suffered

---

[1] The Court notes that Plaintiff does not specify whether his claims are against Defendant Allison in his individual capacity, his official capacity, or both. Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendant Allison in both his individual and official

violations of his civil rights while being held as a pretrial detainee in the PRCJ.

In his Complaint, Plaintiff contends that he was subjected to unconstitutional conditions of confinement and denied medical treatment during his detention at the PRCJ. Specifically, Plaintiff alleges there was standing water in the bathroom areas, mold on the walls, cold food, inadequate drinking water, and toilets that would not flush thus exposing inmates to feces. Also, Plaintiff alleges that he was kicked, beaten, and continuously tased for one and half hours on June 18, 2008.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light

---

capacity. *See Williams v. Love,* 2006 WL 1581908, *5 (S.D.Tex. 2006).

most favorable to the party resisting the motion. *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986). To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact. *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights. Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States. *White v. Thomas*, 660 F. 2d 680, 693 (5th Cir. 1981). A plaintiff cannot succeed merely by showing any deprivation of his rights. Section 1983 was intended to protect rights protected by federal law. *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).

## **APPLICABLE LAW:**

In their Motion [37-1] for Summary Judgment, Defendants contend that Plaintiff's official capacity claims against them are, in reality, claims against Pearl River County. Thus, Plaintiff must demonstrate that his claims are actionable under the United States Supreme Court's jurisprudence regarding municipal liability under section 1983.

Under 42 U.S.C. § 1983, liability may be imposed upon any person who, acting under the color of state law, deprives another of federally protected rights. It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers. Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional

rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading. *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at

580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Because they have not yet been convicted of the crime with which they are charged, pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial detainees as follows:

> [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. **Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright,* 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or "episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc). The Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996). "Punishment" may be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if it is arbitrary or purposeless" *Bell*, 441 U.S. at 539. "Reasonably related" means that the restriction is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. *Id.* at 561. "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pre-trial detainee alleges unconstitutional conduct which involves an episodic act or omission, the question is whether the state official acted with deliberate indifference to the inmate's constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001). When the alleged constitutional violation is a particular act or omission by an individual that points to a derivative policy or custom of the municipality, the deliberate indifference standard is appropriate. *Scott,* 114 F.3d at 53-54. To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v. Murphy,*

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker,* 51 F.3d 714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United States Bureau of Prisons,* 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone and visitation privileges); *United States v. Millan,* 4 F.3d 1038 (2d Cir.1993) (length of pre-trial detention); *Hause v. Vaught,* 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v. Barry,* 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell,* 838 F.2d 28 (1st Cir.1988) (22-23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins,* 711 F.2d 31 (4th Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson,* 651 F.2d 96 (2d Cir.1981) (overcrowding).

174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of confinement and episodic acts or omissions. Therefore, the Court shall address the two categories of allegations individually.

**I. Conditions of Confinement:**

Plaintiff alleges that he was subjected to unconstitutional conditions of confinement while he was incarcerated as a pretrial detainee within the PRCJ, and that Defendant Allison is officially liable because he failed to remedy the situation. Plaintiff's official capacity claim against Defendant Allison is, in reality, a claim against the office which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability; that the PRCJ had an official policy, practice or custom which would subject it ti section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff's allegations include that he was served cold meals, housed where the bathroom areas contained standing water, exposed to mold on walls, given inadequate drinking water, and exposed to toilets that sometimes would not flush. However, other than the above mentioned allegations of unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant

official capacity claim against Defendants. Accordingly, Defendants are entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the PRCJ.

Additionally, Plaintiff's Complaint seeks to impose liability against Defendant Allison in his individual capacity for the allegedly unconstitutional conditions at the PRCJ. However, because Defendant Allison is a law enforcement official, he may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). As a pretrial detainee, Plaintiff has a constitutional right not to be punished for the crimes with which he has been charged. Therefore, to the extent that Plaintiff seeks to establish § 1983 liability against Defendant Allison, Plaintiff must offer proof that the conditions at the PRCJ were imposed as a form of punishment. *Hamilton,* 74 F.3d at 103. A punitive purpose can be established by direct evidence of intent by detention facility officials to punish the pretrial detainee. *Bell,* 441 U.S. at 538. Alternatively, a punitive purpose may be inferred if the challenged condition is not reasonably related to a legitimate governmental objective. *Id.* at 539.

The Court finds that Plaintiff's allegations concerning the cleanliness of the PRCJ showers and toilets do not rise to the level of constitutional violations. Plaintiff alleges there is mold on the walls, standing water in the bathrooms, and toilets that sometimes will not flush. (*See* Pl.'s Resp. [7-1] Order.) Despite these allegations, the Court notes that Plaintiff offers no evidence that Defendant Allison maintains the facility in an unsanitary fashion as a form of punishment. Also, Plaintiff fails to even allege that Defendant Allison was even aware of these alleged conditions. Plaintiff's inmate file is devoid of any grievance concerning the above mentioned allegations. Furthermore, the

evidence is clear that Defendants try to maintain the PRCJ in a serviceable condition. Although the facilities are not kept to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)).

Plaintiff's allegations concerning the quality of the food and water served at the PRCJ also fails to state a constitutional claim. Plaintiff's primary complaint is that the food is regularly served at an improper temperature and that the "cold" side of the water fountain sometimes is inoperable. However, Plaintiff has offered no evidence or even made an allegation that the food and water at the PRCJ is served in the alleged manner as a form of punishment. Although the food and water is clearly not to Plaintiff's liking, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Id*. This issue does not rise to an actionable claim.

After a review of the evidence, the Court finds that Defendant Allison is entitled to qualified immunity because Plaintiff has failed to create a genuine issue as to whether the conditions of his confinement were imposed as a form of punishment. The record is bereft of any facts tending to indicate that Defendant Allison was actually aware of the allegedly unconstitutional conditions at the PRCJ. Furthermore, Plaintiff has failed to allege an express intent on the part of Defendant Allison to subject him to the allegedly unconstitutional conditions as a measure of punishment.

Assuming, *arguendo*, that Plaintiff's allegations are sufficient to create an issue as to whether he suffered a violation of his constitutional rights, the Court finds that Defendant Allison is still entitled to qualified immunity because his conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). Furthermore, the Court finds that Plaintiff's allegations do not indicate any objectively unreasonable conduct on behalf of Defendant Allison, as Plaintiff has failed to present any evidence that Defendant was capable of operating the facility in

a different manner. Accordingly, the Court finds that Plaintiff's conditions of confinement claims against Defendant Allison do not rise to actionable claims and must be dismissed.

## II. Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the PRCJ, Plaintiff also alleges that Defendant Allison is liable in both his official-Pearl River County-and individual capacity for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.

### A. Denial of Medical Treatment:

Plaintiff alleges that he and other inmates were denied medical treatment while incarcerated at the PRCJ. Plaintiff's official capacity claim against Defendant Allison is, in reality, a claim against the office which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that the Defendants failed to provide him with medical care. Specifically, Plaintiff claims that he had constant headaches and was denied treatment. However, this is in total contradiction to Plaintiff's medical file which contains several requests for medical treatment, each of which was responded to. (*See* Ex. "I" Attach. [41] Defs.' Mot. Dismiss.) Plaintiff's medical file also contains twenty-two (22) medication refusal forms, and indicates on several occasions Plaintiff refused to have his blood pressure checked. *Id*. Other than the above mentioned allegation of

inadequate medical care, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against Defendant Allison.

Plaintiff's Complaint also seeks liability against Defendant Allison in his individual capacity. In response, Defendant Allison has plead the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him

incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendant Allison contends, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Allison was deliberately indifferent to his serious medical needs. Plaintiff's only claim is that he had constant headaches and was denied medical attention. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Allison was deliberately indifferent to his serious medical needs. There is no evidence indicating that Plaintiff was ever denied any medical request, and certainly no evidence that Defendant Allison was aware that Plaintiff was in need of treatment. Therefore, Plaintiff has not alleged sufficient facts to permit an inference that Defendant Allison was aware of a serious risk to Plaintiff's health. Furthermore, Plaintiff's Complaint alleges that, at worst, his complaints of headaches went unanswered. The Court finds that such a malady does not constitute a serious medical need, and therefore Plaintiff has failed to prove that Defendant Allison's inattention amounted to deliberate indifference to an excessive risk to his safety or health. Furthermore, the evidence of record indicates that all of Plaintiff's sick call requests concerning headaches, blood in stool, pain in left knee, pain in chest, and muscle spasms were responded to by the PRCJ medical staff. (*See* Ex. "I" Attach. [41] Defs.' Mot. Dismiss.) Disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). This issue does not rise to an actionable claim.

B. Excessive Force

Plaintiff's Complaint also makes allegations regarding an incident of violence involving the employees of the PRCJ. Specifically, Plaintiff alleges that on June 18, 2008, he was kicked, beaten,

and tased for one and a half hours. Plaintiff asserts that Defendant Allison is liable in both his individual and official capacity for this alleged incident.

The Defendants note that a shakedown took place on June 18, 2008, in response to a riot between inmates which resulted in one inmate being taken to the emergency room. (*See* Ex. "H" Attach. Defs.' Mot. [37-1] Dismiss.) Defendants claim that the prisoners were taken to the basketball court, for the safety of the correctional officers and the prisoners, while the jail was searched for contraband. *Id*. Defendants note that there were twice as many inmates housed in the zone as there were correctional officers conducting the shakedown. *Id*. Defendant Allison claims that he was not present on June 18, 2008, and did not participate in the shakedown. *Id*. Furthermore, Defendant Allison notes that he did not receive any grievance or complaint from Plaintiff following the shakedown. (*See* Ex. "H" Attach. Defs.' Mot. [37-1] Dismiss.)

Plaintiff's official capacity claim against Defendant Allison is, in reality, a claim against the office which he occupied at the time of the alleged incident and, ultimately, Pearl River County. Therefore, to the extent Plaintiff brings this action against Defendant Allison in his official capacity, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the PRCJ had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the PRCJ's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Other than the above allegation of an incident of allegedly unconstitutional conduct, Plaintiff presents no evidence that an official policy of the PRCJ existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged

constitutional violation. Plaintiff has presented no evidence that Defendant Allison was involved in the alleged assault against him or was even aware it had occurred. At best, Plaintiff's assertions amount to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against the Defendants.

To the extent that Plaintiff seeks to hold Defendant Allison liable in his individual capacity, Defendant Allison asserts that he is entitled to the defense of qualified immunity. Also, Defendant Allison notes that he was not present during the shakedown, and that Plaintiff has not identified anyone that he claims kicked, beat, or tased him. As the Supreme Court reiterated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952, 173 L. Ed. 2d 868, 887 (2009), in cases similar to the case *sub judice*, where the doctrine of *respondeat superior* is inapplicable, a defendant cannot be held liable unless he himself acted on account of a constitutionally protected characteristic. Since "vicarious liability is inapplicable to... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 1948, 173 L. Ed. 2d 868 (2009). "A Complaint must state a claim that is plausible on its face." *Id*. at 1949-50, 1953, 173 L. Ed. 2d 868 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). As was the case in *Iqbal*, here the Plaintiff's Complaint does not contain any factual allegations sufficient to plausibly suggest Defendant Allison himself violated a constitutional right of the Plaintiff. Therefore, Plaintiff's pleadings do not meet the standard necessary to comply with Federal Rule of Civil Procedure 8 and subject Defendant Allison to liability in his individual capacity.

However, out of an abundance of caution, the Court will analyze Defendant Allison's claim of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right.

*Siegert*, 500 U.S. at 231. While Plaintiff alleges, in his original Complaint [1-1], that assaults on other inmates perpetrated by the employees of PRCJ occurred, the Court notes that Plaintiff has no standing to assert the claims of these individuals. *See Warth v. Seldin*, 422 U.S. 490, 498-99 (1975). Plaintiff has not presented a statement from any witness who may have observed this alleged assault and he identifies no specific individuals who perpetuated this alleged assault. Finally, the Court notes that there is a conspicuous absence of any medical requests, sick call slips, or grievances seeking medical treatment for any injuries sustained from the alleged assault. While Plaintiff alleges he was assaulted on June 18, 2008, by PRCJ employees, Plaintiff does not present any evidence that he suffered any physical injury. The Court notes that § 1983 imposes liability only for violations of constitutional rights, and not merely for violations of duties of care arising under tort law. Thus, not every injury caused by a state official is actionable under § 1983. *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1229 (5th Cir. 1988); *Mark v. Caldwell*, 754 F.2d 1260, 1261 (5th Cir. 1985) (recognizing that § 1983 does not provide a cause of action for every injury wrongfully inflicted by a state officer). Accordingly, § 1983 remedies are limited to official conduct that (1) caused some meaningful injury, (2) was grossly disproportionate to the need presented, and (3) was motivated by malice. *Hinojosa*, 834 F.2d 1229. Therefore, the Court is left to conclude that Plaintiff has failed to create a genuine issue as to whether he suffered a violation of his constitutional rights.

Assuming, *arguendo*, that Plaintiff has raised a genuine issue as to whether his constitutional rights were violated, the Court finds that Plaintiff has presented no evidence of any unreasonable conduct on behalf of Defendant Allison. Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss*, 135 F.3d 320, 327 (5th Cir. 1998). In order to overcome the bar of qualified immunity, Plaintiff must allege that Defendant Allison's conduct was objectively unreasonable in response to the alleged

assault recounted in Plaintiff's Complaint.

The Court notes that Plaintiff has presented no evidence that Defendant Allison was involved in this alleged assault or was even aware that it had occurred. It appears that Plaintiff seeks to establish Defendant Allison's liability based on the conduct of his employees. However, the doctrine of *respondeat superior* is inapplicable in Section 1983 cases. *Williams v. Luna*, 909 F.2d 121, 123 (5th Cir. 1990). Therefore, because Plaintiff is unable to present any evidence of Defendant Allison's personal involvement in the alleged assault, any evidence of Allison's knowledge of the conduct of his employees, or any other unreasonable conduct on behalf of Allison, the Court finds that Allison is entitled to qualified immunity against Plaintiff's individual capacity claims.

## **CONCLUSION:**

Based on the forgoing analysis, this Court is of the opinion that Plaintiff has failed to meet his burden of demonstrating any genuine issues of material fact which would preclude summary judgment on his section 1983 claims. Therefore, this Court finds the Defendants' Motion [37-1] to Dismiss or in the Alternative for Summary Judgement and Qualified Immunity should be granted, and that all claims against Pearl River County should be dismissed with prejudice, as well as all claims against David Allison in both his individual and official capacity. Accordingly, this Court finds this case should be dismissed with prejudice.

SO ORDERED, this the ___15th___ day of September, 2009.

_s/ John M. Roper, Sr._
CHIEF UNITED STATES MAGISTRATE JUDGE